Filed 10/18/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEIGH ROBINSON,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>U-HAUL COMPANY OF CALIFORNIA, et al.,<br><br>     Defendants and Appellants. | A141396, A145828<br><br>(Solano County<br>Super. Ct. No. FCS031532) |

## I.  INTRODUCTION

Nearly ten years ago, appellant U-Haul Co. of California (UHC)[1] sued respondent Leigh Robinson, one of UHC's independent dealers, for breach of contract and unfair competition after he terminated their contract and began renting Budget trucks from what was formerly a UHC dealership (*Robinson I*).  UHC alleged a covenant not to compete in the UHC dealer contract prohibited Robinson from offering the products of UHC's competitors while a Yellow Pages ad, running at UHC's expense, was still promoting Robinson's business as a U-Haul dealership.  Robinson filed a cross-complaint seeking to

---

[1] Appellant U-Haul International, Inc. (UHI) is UHC's corporate parent.  The parent and subsidiary are sometimes referred to collectively as "U-Haul" or "the U-Haul defendants."

avoid enforcement of the covenant not to compete by, among other things, seeking a judicial declaration that it was void due to fraud in the inducement.[2]

After UHC lost its request for a preliminary injunction and dismissed its complaint, Robinson filed a separate action alleging malicious prosecution by UHC in the prior lawsuit and violation by U-Haul of Business and Professions Code[3] section 17200, et seq., also known as the unfair competition law (UCL) (*Robinson II*). He based his UCL cause of action on UHC's inclusion of the covenant not to compete in its dealer contracts, which he alleged was illegal, and its aggressive enforcement of that provision through litigation and threats of litigation. A jury awarded Robinson more than $195,000 in compensatory damages for malicious prosecution. The trial court later issued a permanent injunction prohibiting U-Haul from initiating or threatening to initiate judicial proceedings to enforce the noncompetition covenant in California. It awarded Robinson more than $800,000 in attorney's fees as a private attorney general on his UCL cause of action.

In their consolidated appeals from *Robinson II*, the U-Haul defendants argue (1) the trial court committed reversible error in issuing a permanent injunction because UHC had voluntarily abandoned enforcement of the covenant not to compete in California, and (2) the court abused its discretion in awarding attorney's fees to Robinson as a private attorney general because Robinson's request for fees was late-filed. We conclude the injunction was properly entered and the court did not abuse its discretion in allowing Robinson to file a late motion for attorney's fees. We therefore affirm the judgment and the award of fees.

---

[2] We hereby grant Robinson's request for judicial notice filed April 8, 2016. (Evid. Code, §§ 452, 459.)

[3] Subsequent citations to code sections are to the Business and Professions Code, unless otherwise specified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Relationship Between the Parties

In 2001, Robinson purchased Downtown Self Storage, a self-storage business in Fairfield, California. On August 1, 2001, he signed a standard form dealer contract with UHC and renewed the contract three years later. Under the dealer contract, UHC and Robinson agreed that he would rent U-Haul vehicles and equipment at his storage facility and they would share the rental income. UHC also agreed to promote and advertise Robinson's storage business as a U-Haul rental location, including Yellow Pages advertisements using the U-Haul trademark.

UHC's standard dealer contract included a "Noncompetition Covenant" requiring Robinson to refrain from competing with UHC by representing U-Haul's competitors while the Yellow Pages ad remained in print: "Dealer warrants, covenants and agrees that . . . Dealer . . . shall not represent or render any service either on its own behalf or in any capacity . . . for the duration of the then-existing or contracted-for telephone directory listing(s) for the Dealer Location." An addendum to the contract extended the "Noncompetition Covenant" for another year after expiration of the advertising, which could leave a dealer unable to rent competitors' trucks for two years or more. Covenants not to compete are, with limited exceptions, illegal under California law. (§ 16600, et seq.; see *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945.)

Between 2001 and 2006, UHC advertised Downtown Self Storage in the Fairfield and Vacaville area Yellow Pages as a place where consumers could find U-Haul rental vehicles and equipment. UHC paid for the dealer ads on an annual basis, placing the orders several months before the directory listings were published.

On September 6, 2006, a month after UHC had renewed the annual Yellow Pages advertising (and after it was too late to cancel the ads), Robinson sent a letter to UHC terminating their dealer contract. A few days later, Robinson opened a Budget rental truck dealership at Downtown Self Storage. UHC responded by writing to Robinson, warning him not to compete with UHC while the Yellow Pages ad was running. In the letter UHC said it was the "policy of U-Haul to aggressively protect its legitimate

3

business interests by seeking to enforce the non-competition provisions" of the dealer contract, and that it would, "without hesitation, . . . consider any and all remedies available to it at law and in equity."

**B. The Proceedings in *Robinson I***

In December 2006, UHC filed its complaint in *Robinson I* in Solano County Superior Court against Robinson in docket No. FCS028840. UHC asserted causes of action for unfair competition, breach of contract, and specific performance. UHC's lawsuit alleged that Robinson was impermissibly offering Budget trucks for rent at the same time that UHC's Yellow Pages ad identified Robinson's business as a U-Haul dealership. In addition to damages, restitution, an accounting, attorney's fees and costs, UHC sought preliminary and permanent injunctions requiring Robinson to discontinue his relationship with Budget and to refrain from entering into business with any other competitor of UHC until a year after the Yellow Pages ads expired.

Robinson filed a cross-complaint for declaratory relief and breach of contract. He alleged UHC had breached the dealer contract in various material ways, relieving him of the obligation to comply with the covenant not to compete. He further alleged the covenant not to compete was void based on fraud in the inducement, and he sought a judicial declaration to that effect.

In June 2007, UHC filed a motion for a preliminary injunction, and Robinson opposed it, primarily based on the theory that the noncompetition covenant was void under section 16600. The court denied UHC its requested preliminary injunction. Approximately three weeks later, UHC dismissed its complaint in *Robinson I*. According to a declaration by Robinson's lawyer, UHC dismissed its complaint in an effort to avoid having to pay Robinson's attorney's fees. In mid-November 2007, UHC filed a motion for summary judgment on Robinson's cross-claims, together with the supporting declaration of Jeff Singleton (a UHC management level employee). Singleton stated under oath that UHC had dismissed its complaint against Robinson and would not "re-file or reinitiate any proceedings against Downtown [Self Storage] seeking to enforce the

4

noncompetition provisions." UHC's motion for summary judgment argued that the cross-claims were therefore moot.

Robinson dismissed his cause of action for breach of contract, but maintained his action for declaratory relief. Two weeks after UHC filed its summary judgment motion, he filed a motion for summary judgment on his declaratory relief cause of action, asking the court to declare UHC's noncompetition covenant void. As the court would later observe, Robinson had by that time developed the argument that UHC had a "pattern of threatening to sue, and/or filing lawsuit[s], against former dealers with identical non-competition covenants, with no evidence or reasonable expectation of use of trade secrets by these former dealers, that would legally justify attempted enforcement of the covenants." Robinson sought declaratory relief despite UHC's claim that the dispute was moot because, Robinson argued, UHC's wrongdoing was "capable of repetition, yet evading review."

In February 2008, the trial court (Judge Paul L. Beeman) in *Robinson I* denied Robinson's motion for summary judgment on his declaratory relief cause of action in part because it was moot in light of the fact that UHC had waived enforcement of the noncompetition clause against Robinson. As for Robinson's contention that UHC's misconduct was "capable of repetition, yet evading review," the court ruled that Robinson had failed to produce "sufficient admissible evidence that U-HAUL had, or currently has, cases against other dealers pending in which U-HAUL attempted or is attempting to enforce non-competition covenants without a reasonable expectation that the dealer used or is using its trade secrets."

UHC's motion for summary judgment remained pending at that time, as Robinson was seeking to reopen discovery to locate additional litigation between UHC and its dealers. Robinson claimed he had found through his own investigation a number of lawsuits against dealers that UHC had failed to disclose in discovery. Robinson was granted limited additional discovery on that basis in May 2008. UHC's summary judgment motion in *Robinson I* was never ruled upon because Robinson ultimately dismissed his cross-complaint for declaratory relief before there was a ruling. UHC

5

unsuccessfully sought recovery of attorney's fees in *Robinson I*, with the court determining in May 2013 that UHC was not the prevailing party.

### C. The Trial in *Robinson II*

On June 9, 2008, while *Robinson I* was still pending, Robinson filed *Robinson II* as a class action in docket No. FCS031532.[4]  He alleged causes of action against the U-Haul defendants for malicious prosecution and violation of the UCL.  Through his UCL claim, Robinson sought to permanently enjoin the U-Haul defendants from including the covenant not to compete in future U-Haul dealer contracts in California, to require them to notify their current dealers that the covenant was void and unenforceable, and to order them to dismiss any action in any court in California through which they sought to enforce the covenant.

In August 2013, the court tried the malicious prosecution cause of action in *Robinson II* together with the UCL cause of action before a jury, with the trial structured so that the jury would decide only the malicious prosecution action, while the court would decide the UCL claim.  (See *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284–285 [no jury trial on UCL claims].)  At the conclusion of the trial, the court determined as a matter of law that the noncompetition covenant was illegal in California and that U-Haul knew this at the time it inserted the noncompetition clause into its dealer contracts.  The judge said: "First off, the clause is void and unenforceable as a matter of law.  [Section] 16600 was—the law predated these events herein by many, many years.  Their only reason to put a void contract clause in a contract is to mislead people.  U-Haul knew when it put that in its contract that [section] 16600 of the [Business and Professions] [C]ode was in existence.  That statute was clear.  [¶] Why would you possibly put something in a contract where the law says it's void?  You do that so you can cause somebody to think that that clause is, in fact, valid when it isn't.  So it is void and unenforceable as a matter of law."  U-Haul does not challenge this ruling on appeal.

---

[4] The trial court denied Robinson's motion for class certification.  The action then proceeded as an individual action.

Throughout both *Robinson I* and the trial in *Robinson II*, UHC attempted to defend its noncompetition covenant, claiming Robinson had misappropriated UHC's trade name and trade secrets. (See *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242; *Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 863.) On August 22, 2013, the jury found, among other things, that UHC did not reasonably believe Robinson was misusing trade secrets or confidential information when it filed *Robinson I* and that U-Haul did not reasonably believe Robinson's renting Budget trucks would confuse its customers while the Yellow Pages ad was running. The jury awarded Robinson compensatory damages of $195,310 on his malicious prosecution claim, but awarded no punitive damages, and the court entered judgment thereon.

In September and October 2013, the parties submitted briefing and additional supporting documentation on Robinson's UCL cause of action. Robinson argued he was entitled to judgment on that claim, asked the court to grant an injunction, and requested attorney's fees. Robinson introduced into evidence an order of the Federal Trade Commission (FTC) dated in 1987 that prohibited UHI and its subsidiaries from initiating or participating in any judicial or administrative proceeding in which its "primary purpose [was] to harass or injure any competitor or potential competitor." Robinson also presented evidence of four lawsuits that had been filed in California by UHC between 1995 and 2005 against its former dealers in which it attempted to enforce the noncompetition covenant.

On October 1, UHC filed a motion for judgment on the UCL cause of action, arguing an injunction was unauthorized because Robinson lacked standing under the UCL and such claims were in any case moot because UHC had abandoned all attempts to enforce the noncompetition covenant in California. In support of its position, UHC filed the declaration of Kristine Campbell (in-house counsel for UHC) attesting: "In 2010, UHC modified its Dealer Contracts to make the noncompetition clause void where prohibited." She added, "Since the dismissal of *Robinson I*, UHC has not attempted to enforce the noncompetition clause in California and currently has no pending cases seeking enforcement of the noncompetition clause in California." And finally, "Since

2010, UHC's corporate policy has been, and continues to be, that it will neither threaten nor bring any action against its independent dealers to enforce the covenant not to compete contained in the dealer contract. UHC has advised its dealers of this policy." Robinson's attorneys, in fact, were able to turn up anecdotal evidence from several dealers who claimed they had not been so notified.

On January 17, 2014, Judge Harry S. Kinnicutt filed his "Order after Hearing on Plaintiff's Motions." The judge found in favor of Robinson on his UCL claim but limited relief to "issuance of a permanent injunction against UHAUL prohibiting it from instituting, or threatening to institute, judicial proceedings to enforce against any former or current dealers the non-competition covenant in its dealer contracts." Judge Kinnicutt ruled Robinson's UCL claim was not moot because it presented an issue of broad public interest that was likely to recur. Although the court did not expressly rule that Robinson met the standing requirements of section 17204, it implicitly rejected U-Haul's argument that he did not.

On January 22, 2014, the court entered its final judgment in favor of Robinson on both the malicious prosecution and UCL claims, and the clerk served notice of entry on January 24, 2014. Although Robinson was awarded the damages found by the jury in the malicious prosecution cause of action, the only remedy provided under the UCL was the injunction described above. In the final judgment the court ordered that Robinson "shall also recover attorneys' fees against" U-Haul on the UCL claim, but the court left blank spaces where the amounts of such fees were apparently intended to be designated. On March 21, 2014, the U-Haul defendants timely appealed from the judgment.

After further proceedings, which we shall discuss in section III.B., *post*, on May 14, 2015, the court found, under Code of Civil Procedure section 1021.5 (section 1021.5), Robinson was entitled to an award of $834,008.09 in attorney's fees as a private attorney general. U-Haul timely appealed from the trial court's order granting Robinson's motion for attorney's fees. On August 21, 2015, this court ordered the two appeals consolidated at the parties' request.

8

# III. DISCUSSION

## A. Permanent Injunction Precluding UHC from Enforcing Covenant

UHC contends the court erred in issuing a permanent injunction because (1) there was "no evidence" supporting a continuing violation by UHC, so as to justify an injunction; (2) Robinson lacked standing; (3) Robinson's UCL claim did not, in fact, present an issue of broad public interest; (4) the denial of Robinson's motion for summary judgment as moot in *Robinson I* operated through collateral estoppel to bar the issuance of a permanent injunction in *Robinson II*; and (5) the court erroneously excluded the testimony of one of its witnesses who would have testified that UHC had stopped enforcing the covenant not to compete in California.

### 1. *There Was Substantial Evidence Supporting the Court's Factual Findings, and Issuance of the Injunction Was Not an Abuse of Discretion.*

" 'The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, "to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard." ' " (*Salazar v. Matejcek* (2016) 245 Cal.App.4th 634, 647.) Here, there is a dispute about the facts, including whether UHC's claim to have abandoned its past practices was made in good faith. We approach such issues with deference.

The trial court summarized its reasons for issuing the injunction as follows: "UHAUL apparently had followed a policy for years of threatening to enforce, and instituting proceedings to enforce, those covenants. In late 2007, faced with ROBINSON's cross-complaint in the first case, UHAUL carved out an exception for ROBINSON alone (although UHAUL claims, and ROBINSON has no evidence to the contrary, that UHAUL has not sued any other former dealers since bringing the 2007 first case against ROBINSON). Then, in 2010, after ROBINSON in 2008 had filed this

9

second case, UHAUL modified its covenant, but only to state that it was 'void where prohibited'. UHAUL continued up until trial in early 2013 to claim as a defense to this action that the covenant was enforceable under California law. UHAUL now in 2013 through a conclusory declaration of its in-house counsel claims that it has told its California dealers that the covenant will not be enforced against them, but provided no copy of mass letter sent to those dealers, or record of other transmissions of this kind of binding reassurance." The court continued: "Absent clear evidence that UHAUL has confirmed to its California dealers that it will not be enforced, the disclaimer of 'void where prohibited' does not provide sufficient reassurance to the court that this unenforceable covenant will not have some effect detrimental to California dealers or their state-wide customers."

One of the central legal questions in this case is whether a party to a lawsuit can avoid having a permanent injunction issued against it by voluntarily undertaking to do what the injunction would require. There is case authority saying an injunction may be denied on that basis. (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1020; *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 465; *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1393 [injunction would serve no purpose where the "challenged policy was withdrawn nearly four years ago, and nothing in the record indicates any intention . . . to reinstate it"].) But simply because a request for permanent injunctive relief *may* be denied based on voluntary submission to its terms does not mean such a request *must* be denied on that basis. U-Haul nevertheless claims there was "no evidence" before the trial court warranting an injunction. *Nelson* held that a party seeking an injunction must present "actual evidence that there is a realistic prospect that the party enjoined intends to engage in the prohibited activity." (*Nelson*, *supra*, at p. 1020.) Here, the evidence of U-Haul's past practice, coupled with evidence of the half-measures it took in lieu of eliminating altogether the noncompetition covenant in its California contracts, amounted to substantial evidence to support any factual findings necessary to or implicit in the issuance of the injunction.

10

First, there is no hard-and-fast rule that a party's discontinuance of illegal behavior makes injunctive relief against him or her unavailable.  "While voluntary cessation of conduct may be a factor in a court's exercise of its equitable jurisdiction to issue an injunction, it is not determinative . . . ."  (*People ex rel. Feuer v. Superior Court* (*Cahuenga's the Spot*) (2015) 234 Cal.App.4th 1360, 1385.)  Similarly, *Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 929 (*Palsson*) held:  " '[T]he voluntary discontinuance of alleged illegal practices does not remove the pending charges of illegality from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges where by the mere volition of a party the challenged practices may be resumed.' [Citation.]"  And of course, there is the fundamental question whether a defendant's discontinuance of a UCL violation was implemented in good faith.  (*People v. National Association of Realtors* (1981) 120 Cal.App.3d 459, 476 ["where the injunction is sought solely to prevent recurrence of proscribed conduct which has, *in good faith* been discontinued, there is no equitable reason for an injunction"] (italics added).)  Where, as here, a company has not taken action to bind itself legally to a violation-free future, there may be reason to doubt the bona fides of its newly established law-abiding policy.

Second, UHC's lawsuit against Robinson was not an isolated one.  Based on the court's finding that U-Haul knew when it inserted the noncompetition covenant into the contract that the clause was illegal in California,[5] it appears UHC had acted in knowing violation of the law over a period of many years.  UHC's own letter to Robinson in October 2006 said the company had a "policy of . . . aggressively protect[ing] its

---

[5] The state of the law itself lends credence to the court's finding.  Section 16600 has been a part of California law since 1941, and traces its origins back to 1872 in former Civil Code section 1673.  (*Edwards v. Arthur Andersen LLP*, *supra*, 44 Cal.4th at p. 945.) It has long been understood to make garden variety noncompetition covenants void. (See, e.g., *Kelton v. Stravinski* (2006) 138 Cal.App.4th 941, 946; *Hill Medical Corp. v. Wycoff* (2001) 86 Cal.App.4th 895, 900–901; *South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074, 1080; *KGB, Inc. v. Giannoulas* (1970) 104 Cal.App.3d 844, 847–850.)

legitimate business interests by seeking to enforce the non-competition provisions." This statement was borne out by Robinson's evidence of other lawsuits UHC had filed against its dealers over a period of ten years before UHC sued Robinson. Evidence of such an ingrained, long-term, knowingly illegal corporate practice provides support for a finding of likely repetition in the future.

Third, even when UHC revised its standard dealer contract in 2010, it did not purge the offending covenant from its California contracts. The court explicitly found that inserting the words "void where prohibited" into the language of the dealer's contract was insufficient to solve the problem. It also found insufficient evidence of across-the-board notification of current dealers to support a finding that UHC had corrected its anticompetitive behavior.

Fourth, UHC's change in policy came only after it lost its motion for a preliminary injunction in *Robinson I* and after the complaint in *Robinson II* was filed. And despite the purported change in policy in 2010, UHC continued to insist at trial in *Robinson II* that its noncompetition covenant was valid and enforceable. It thus changed its policy only when threatened with an injunction. On this record, the trial court found that UHC's promise to refrain from further enforcement of its noncompetition covenant could not be relied upon as the sole means of ensuring a change of practice in the future.

As we read Judge Kinnicutt's orders and judgment, the injunction was a response in part to U-Haul's *resistance* to amending its policies, and its *persistence* in pursuing its anticompetitive litigation strategy over the years, up to the time it initiated the lawsuit in *Robinson I* and even throughout the trial in *Robinson II*. The injunction eliminates a practice that is now shrouded in uncertainty and plagued by a troubling past. We have no reason to overturn the trial court's decision to issue an injunction, as it did not result from lack of evidence, legal error, or an abuse of discretion.

### 2. *Robinson Had Standing*

UHC claims Robinson lacks standing to seek an injunction against U-Haul under the UCL because he cannot show he personally suffered injury as a result of U-Haul's alleged unfair competition, citing section 17204 and *Amalgamated Transit Union, Local*

12

*1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002 (*Amalgamated Transit*).

Section 17204 vests in the Attorney General, county district attorneys, and city attorneys authority to seek injunctive relief under the UCL, but it also grants such authority to any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204; see *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 800–803 [customer forced to pay unfair refueling costs upon return of rental truck had standing under UCL].)

 *Amalgamated Transit, supra*, 46 Cal.4th 993 dealt with the changes in standing requirements ushered in by voter initiative in 2004 under Proposition 64.[6] (*Id.* at p. 1000.) That case involved a labor union that attempted to assert a UCL cause of action against an employer to enjoin alleged labor law violations and obtain other relief both on behalf of, and as assignee of, its members. (*Id.* at p. 999.) The Supreme Court held the union did not have standing because it had not suffered injury in fact under section 17204. (*Id*. at pp. 999–1002.) *Amalgamated Transit* explained the background of the changes wrought by Proposition 64. (See fn. 6, *ante*.) Suffice it to say, the mere

---

 [6] Before 2004, the UCL allowed "any person acting for the interests of itself, its members or the general public" to seek restitution or injunctive relief against unfair business acts or practices. (Former § 17204, added by Stats. 1977, ch. 299, § 1, p. 1202.) This relaxed standard had been subject to abuse. (*Amalgamated Transit*, *supra*, 46 Cal.4th at p. 1000.) "Proposition 64's Findings and Declarations of Purpose (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) p. 109) expressed concern that the UCL and false advertising law were being 'misused by some private attorneys' (Prop. 64, § 1, subd. (b)) to file suits on behalf of 'clients who [had] not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant' (*id*., subd. (b)(3)) and had not 'been injured in fact' (*id*., subd. (b)(2)) as a way of 'generating attorney's fees without creating a corresponding public benefit' (*id*., subd. (b)(1)). In short, voters focused on curbing shakedown suits by parties who had never engaged in *any* transactions with would-be defendants. [Citation.] No corresponding concern was expressed about suits by those who had had business dealings with a given defendant . . . ." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 335, fn. 21.) Thus, "[w]hile Proposition 64 clearly was intended to abolish the portions of the UCL . . . that made suing under them *easier* than under other comparable statutory and common law torts, it was not intended to make their standing requirements comparatively *more* onerous." (*Id*. at p. 335.)

likelihood of harm to members of the public is not sufficient to confer standing on any individual. (*Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 628.) But if a plaintiff has suffered particularized harm as a result of the defendant's anticompetitive conduct, standing has been upheld. (See *Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1, 12–13.)

We agree with Robinson that he has standing in this action because he was sued by UHC in *Robinson I* to enforce the covenant not to compete and incurred attorney's fees and costs as a result. The alleged unfair business practice in this case was not just the inclusion of the noncompetition covenant in UHC's dealer contracts, but the strategic use of litigation and threatened litigation to achieve its anticompetitive purpose. Robinson successfully showed that *Robinson I* was part of a pattern of business activity in which UHC sought to intimidate its former dealers from setting up business relations with UHC's competitors. (Cf. *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 108–113 [collection agency's pattern of intentionally commencing litigation in improper venues for the purpose of impairing its adversaries' ability to defend such suits was an "unlawful business practice" under predecessor to § 17200].) When Robinson refused to break ties with Budget, he was sued and thereby suffered an injury in fact and lost money by way of court costs and attorney's fees. This is not a case where an unscrupulous attorney teamed up with a stick figure plaintiff to shake down a completely unrelated business. (See fn. 6, *ante*.) As one of the victims of UHC's anticompetitive business practice, Robinson has standing.

### 3. *The Court's Finding of a Broad Public Interest Was Supported by the Record and Was Not an Abuse of Discretion*

A major thrust of UHC's briefing is that this litigation is moot. UHC acknowledges, however, that " '[i]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.' " (*Johnson v. Hamilton* (1975) 15 Cal.3d 461, 465.) UHC contends the trial court erred in finding a "broad public interest" at stake in this case. (Cf. *Application Group v.*

14

*Hunter Group* (1998) 61 Cal.App.4th 881, 892–893 (*Application Group*) [declaratory relief held properly granted, even though the individual plaintiff's case was moot].)

The parties have cited no cases articulating the standard of review on the "broad public interest" determination, and we have located none. Issues of justiciability, such as mootness, are generally reviewed de novo. (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99 [ripeness]; *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174 [mootness reviewed de novo where facts are undisputed]; *Gilb v. Chiang* (2010) 186 Cal.App.4th 444, 457–461 [justiciability]; *Biodiversity Legal Found. v. Badgley* (9th Cir. 2002) 309 F.3d 1166, 1173 [appellate courts "review mootness, a question of law, de novo"].) But since the broad public interest exception to mootness is an exercise of the court's "inherent discretion" (*Johnson v. Hamilton*, *supra*, 15 Cal.3d at p. 465), the determination arguably could be subject to an abuse of discretion standard of review. (See *Application Group*, *supra*, 61 Cal.App.4th 881 at p. 893 ["Whether an action is justiciable . . . is . . . a matter entrusted to the sound discretion of the trial court"].) We need not decide which standard applies, as we would reach the same result under any standard.

UHC claims there is no California case finding a noncompetition clause to present an issue of broad public concern. That ignores *Palsson*, upon which the court below relied. While *Palsson* did not deal directly with a covenant not to compete, its holding is pertinent here because it dealt with a private entity's curtailment of employment opportunities through policies adopted in its bylaws.

In *Palsson*, an association of real estate brokers and sales associates, to which three-quarters of brokers in the county belonged, denied Palsson's application for membership—and hence his access to the multiple listing service (MLS)—because he was primarily employed as an airline engineer and sold real estate only part-time. (*Palsson*, *supra*, 16 Cal.3d at p. 924.) Under the association's bylaws, a salesman had to be "primarily engaged in the real estate business" in order to join, and members were prohibited from employing or sharing office space with anyone denied membership. (*Ibid.*) Thus, a part-time salesman faced not only denial of access to the MLS, but also

15

denial of "employment with 75 percent of the residential brokers in Marin County." (*Id.* at p. 925.) When Palsson contested the board's decision denying him membership, the board sought a declaratory judgment that its bylaws were valid. (*Id.* at pp. 923–925.)

The central question in the case was whether the board's "primarily engaged" rule and related limitation on access to the MLS violated the Cartwright Act (§§ 16720, 16726). Before reaching that question, the California Supreme Court addressed a number of preliminary issues, including mootness. (*Palsson*, *supra*, 16 Cal.3d at pp. 925–930.) The real estate association argued the action was moot because it had changed its bylaws, allowing part-time brokers to become associate members. (*Id.* at p. 928.) Despite this fact, the Supreme Court, noting on the merits that "the practices of the board pose serious anticompetitive dangers both to licensed real estate salesmen and brokers and to consumers" (*id.* at p. 935), and then ultimately finding those practices to violate the Cartwright Act, held the broad public interest exception to mootness applied because "[t]he issues raised are of substantial interest not only to real estate boards and home-buyers but also to all trade associations and their members, and to consumers in general" (*id*. at p. 930).

*Palsson* also mentioned that "the importance of the questions involved [was] partly shown by the appearance of the California Association of Realtors, the Attorney General, and the District Attorney of Los Angeles County through amicus briefs," and because there were a number of similar cases pending in various trial courts. (*Palsson*, *supra*, 16 Cal.3d at p. 930.) While those may have been factors influencing the court's decision in *Palsson*, we do not think the applicability of the broad public interest exception can legitimately turn on whether amicus briefs were filed, whether any other parties intervened in the action, or whether there were currently pending actions elsewhere in the state asserting similar positions. The presence of such factors may provide support for a finding of broad public interest, but their absence does not prove the opposite. We have already discussed the trial court's reasons for issuing the injunction in this case, which were sound.

As a secondary argument, UHC contends that the "small number of independent

16

dealers in California" is too limited a group to qualify under the "broad public interest exception." According to Robinson, UHC has approximately 1,000 California dealers, and UHC offers no contrary evidence. We are aware of no rule establishing how many members of the public must be affected in order for the "broad public interest" exception to apply. To our way of thinking, a population of 1,000 dealers, together with past dealers and prospective dealers, makes up a sufficient segment of the public to qualify as a "broad" swath. We hasten to add, however, that here the court found the anticompetitive impact of the covenant spread to more than just dealers. The trial court found the threat to competition extended to the dealers' customers and to the truck rental market in general. UHC's enforcement and threats to enforce the covenant in California negatively affected its competitors by denying them rental outlets for their trucks and hurt the rental market customers by limiting their access to rental trucks and restricting price competition. For the protection of UHC's dealers, past dealers and prospective dealers, UHC's competitors, and the members of the general public who participate in the truck and trailer rental market, an injunction was warranted.

### 4. *Collateral Estoppel*

UHC next contends Judge Beeman's ruling in February 2008 in *Robinson I* denying Robinson's motion for summary judgment on mootness grounds should have operated to collaterally estop Robinson from obtaining an injunction against UHC in *Robinson II*. Whether collateral estoppel applies is a question of law reviewed de novo. (*Duarte v. State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 389, fn. 11.) "At its most fundamental, '[i]ssue preclusion, or collateral estoppel, " 'precludes *relitigation* of issues argued and decided in prior proceedings.' " ' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 227.)" (*Id*. at p. 389.) Collateral estoppel applies only if all of the following conditions are met: (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was

a party to the prior proceeding or in privity with a party to the prior proceeding. (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 (*Zevnik*).)

Based on those requirements, collateral estoppel does not apply here. Robinson did not allege a UCL violation in *Robinson I*, and Judge Beeman did not rule that any issues underlying a UCL action—namely, whether UHC's noncompetition covenant amounted to an "unlawful, unfair or fraudulent business act or practice"—would be mooted, either by the waiver of all claims against Robinson in Singleton's declaration, or by the later and broader disavowal of past practices throughout California, as reflected in Campbell's declaration. The issues raised by Robinson's UCL claim were different from those raised by his request for declaratory relief in *Robinson I*, where Robinson alleged fraud in the inducement as a basis for declaring the noncompetition covenant void. For this reason alone we may reject UHC's collateral estoppel theory. Because the issues in the two cases were different factually and legally, and the occurrences and declarations which purportedly mooted the issues were different in scope, application of the mootness doctrine in the two cases did not involve identical issues and need not be resolved uniformly. The Campbell declaration was not even in existence at the time Judge Beeman made his mootness ruling in *Robinson I*, and hence he could not have determined that Campbell's declaration mooted the issue of the legality of UHC's noncompetition clause under the UCL. Nevertheless, UHC theorizes that Robinson's UCL claim in *Robinson II* was moot when Judge Kinnicutt issued the injunction because Judge Beeman determined five years earlier that his declaratory relief cause of action was moot in *Robinson I*.

As noted above, one of the elements of collateral estoppel is that the decision in question be "on the merits." (*Zevnik*, *supra*, 159 Cal.App.4th at p. 82.) A decision that a matter is moot is not a decision on the merits. (See *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 131–132.) Quite the opposite, it is a decision that the merits need not be reached because there is no longer a live controversy. (*Ibid.*; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶¶ 5:21 to 5.22, pp. 5-5 to 5-6.) Perhaps one might characterize Judge Beeman's ruling as a decision on the

merits of mootness, but it is more accurately characterized as a decision not to decide anything. Witkin describes moot cases as "[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 21, p. 86.) The preferred disposition of a moot case on appeal is either to dismiss the appeal or to reverse the moot judgment and remand with instructions to the trial court to dismiss the action as moot, so as to avoid having the underlying judgment become subject to res judicata. (See *Paul*, *supra*, at pp. 134–135; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 942–945.) Because the mootness decision, by definition, is not a determination on the merits, the mootness determination in *Robinson I* was not binding on the court in *Robinson II*.

Indeed, mootness is highly situational and not readily compatible with the concept of estoppel. It is an aspect of justiciability that must be decided independently by each court with respect to the facts and legal issues before it. Accordingly, we conclude that collateral estoppel does not prohibit the injunction entered here. (Cf. *Application Group*, *supra*, 61 Cal.App.4th at pp. 884, 892–894, 909 [affirmed declaratory relief in favor of corporate plaintiff despite mootness of individual plaintiff's claims]; *In re Stinnette* (1979) 94 Cal.App.3d 800, 804 ["When a case presents questions of general public interest that are likely to recur, the court may render a decision on the merits even though the issue has become moot as to the particular litigant involved."].)

### 5. *Exclusion of Savelle Jefferson's Testimony*

Finally, UHC contends the trial court erroneously excluded evidence that it had voluntarily ceased enforcing its covenant not to sue in California. During the trial, UHC attempted to introduce testimony of Savelle Jefferson, an area field manager, in an effort to show that UHC had changed the language in its dealer contracts and had advised its dealers in California that it would not enforce the restrictive covenant.[7] The trial court

---

[7] Robinson claims that Jefferson, as an area field manager, was not employed in a position to have acquired personal knowledge of statewide communication on this subject.

sustained objections to the questions, ruling such testimony was irrelevant, which UHC cites as error. Employing an abuse of discretion standard of review (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281), we do not agree the court erred.

The relevance of Jefferson's evidence was slim at best. As explained above, evidence of discontinuance of an illegal practice does not compel the court to reject a request for an injunction. It is only one factor to consider, and it bears little weight if its credibility is doubtful. Even if marginally relevant, the court could have validly considered Jefferson's evidence on this point to be of such minimal significance that it could reasonably have been excluded under Evidence Code section 352. A party's failure to refer specifically to section 352 as a basis for objection does not preclude a trial court from exercising its discretion sua sponte to exclude proffered evidence on that ground. (*People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100 & fn. 5; *People v. Jackson* (1971) 18 Cal.App.3d 504, 508–509.)

More important, assuming for argument's sake the court should have allowed the testimony, we would find the error harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 783 [*Watson* standard applies to evidentiary errors].) Before ruling on the attorney's fees issue, the court received the declaration of Campbell, which duplicated in substance the evidence UHC had attempted to elicit from Jefferson. The court referred to Campbell's declaration in its order filed January 17, 2014. Thus, it considered but rejected UHC's argument and evidence that the abandonment of its attempts to enforce the noncompetition clause made injunctive relief unavailable. Jefferson's testimony would have been cumulative, and it is unlikely anything he said would have made a difference to Judge Kinnicutt. The exclusion of Jefferson's testimony was at worst harmless error.

## B. Robinson's Late Filing of His Motion for Attorney's Fees

Finally, the U-Haul defendants claim they cannot be ordered to pay Robinson's attorney's fees because he did not follow the proper procedure in seeking his fees award. Again, we disagree and affirm the trial court's order.

20

## 1. *Proceedings Related to Attorney's Fees*

On September 6, 2013, before judgment was entered, Robinson filed a motion for contractual attorney's fees under the dealer contract in connection with his malicious prosecution cause of action. He also claimed in briefing that he was entitled to attorney's fees as a private attorney general under section 1021.5.[8] The total amount he claimed in fees for both causes of action was $1,063,248.29.

The trial court issued a tentative ruling on October 4, 2013, denying Robinson's request for attorney's fees because the jury's verdict in his favor on the malicious prosecution cause of action was interlocutory, as judgment had not yet been entered on the UCL claim. With regard to Robinson's request for attorney's fees under section 1021.5, the tentative ruling stated: "If the court's ruling awards Plaintiff the right to attorneys fees as to the unfair business practices [UCL] cause of action, the determination of the amount of those fees is deferred to proper and timely later filing of a motion for attorneys fees, following issuance of the court's final judgment." As noted above, the court included in its judgment that Robinson "shall also recover attorneys' fees" on the UCL claim, but did not indicate an amount of any award.

On February 5, 2014, after judgment was entered, Robinson filed a memorandum of costs seeking, among other costs, $1,154,738 in attorney's fees. UHC responded with a motion to tax costs, arguing that Robinson could not seek attorney's fees by way of a memorandum of costs, but instead was required to file a noticed motion. At that time, Robinson still had time to file a motion for attorney's fees within the 60 days permitted under Rule 3.1702(b)(1) [motion must be brought within time allowed for filing notice of

---

[8] That section provides, in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

21

appeal].[9] But instead Robinson simply opposed the motion to tax costs, arguing that seeking his attorney's fees by a memorandum of costs was appropriate because there was "no debate" he was entitled to attorney's fees after the final judgment ordered such recovery.

On April 3, 2014, a hearing was held on UHC's motion to tax costs. At the hearing, apparently in response to the court's tentative ruling, Robinson's counsel abandoned his argument that a motion was not required, but argued he was allowed to file such a motion under section 1021.5 at any time after entry of final judgment. "There is no express time limit," he told the court, relying primarily on *Angelheart v. City of Burbank* (1991) 232 Cal.App.3d 460, 466. The next day, UHC submitted a letter brief to the trial court in which it contended that Rule 3.1702 required Robinson to file his motion for attorney's fees within 60 days after the court clerk's service of notice of entry of the final judgment, and the deadline had already passed. UHC argued that *Angelheart* had been "overruled" by *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 427. In his response to UHC's letter brief, Robinson conceded that Rule 3.1702 applied but argued that, pursuant to Rule 8.104(a), the court should treat his prematurely filed requests for attorney's fees as timely filed.

On June 19, 2014, the trial court issued its order on UHC's motion to tax costs. The court noted it had more than once advised Robinson's counsel that his motions for attorney's fees were premature and told him he had to re-file the motion after final judgment. Yet Robinson had failed to file a motion for attorney's fees within the 60 days allowed by Rule 3.1702. On that basis the court struck the entire amount requested for attorney's fees from Robinson's memorandum of costs, without prejudice to a renewed motion if Robinson sought and was granted an extension of time under Rule 3.1702(d).

Robinson then filed a motion to extend time to file a motion for attorney's fees in which he sought to excuse his failure to timely file his attorney's fees motion based on his attorney's "mistaken view that the Court had already determined that Robinson was

---

[9] References to rules are to the California Rules of Court.

22

entitled to attorneys' fees and that therefore any motion for attorneys' fees would be moot." Specifically, Robinson's counsel stated in a declaration under oath: "The [October 4, 2013] Tentative Ruling appeared to treat Robinson's Motion for Attorneys' Fees concerning his cause of action for Malicious Prosecution separate from his request for attorneys' fees and related briefing contained in his brief concerning his §17200 Claim. Consequently, I believed that while the former was premature, the latter was accepted as properly filed, and was considered by the Court." Robinson's lawyer continued: "I believed that because the Final Judgment stated that Robinson 'shall also be' entitled to attorneys' fees, the Court had deemed Robinson's premature Motions for Attorneys' Fees as timely filed . . . ."

On January 15, 2015, the trial court granted Robinson's motion to extend time, finding Robinson's "honest mistake as to the necessity to file the attorneys' fees motion" provided good cause to grant him more time under Rule 3.1702(d). Robinson followed with a motion for a total of $1,166,430.51 in attorney's fees, claiming he was entitled to fees for his malicious prosecution cause of action based on a contractual provision in the dealer contract, and under a private attorney general theory as authorized by section 1021.5 in connection with his UCL claim.

On May 14, 2015, the trial court denied Robinson's request for contractual attorney's fees because the malicious prosecution claim was one based in tort, not contract. On the other hand, the court granted Robinson's request for fees in the amount of $834,008.09 in connection with his UCL claim. It found (1) Robinson had enforced "an important right affecting the public interest, insofar as it furthered the strong California public policy in favor of free markets and against restraint of trade"; (2) Robinson's legal action conferred "a significant benefit . . . on the general public or a broad class of persons, namely the many independent dealers in California engaged in the business of renting moving vans or trucks, and the multitude of California residents who move"; and (3) the necessity and financial burden of private enforcement transcended Robinson's personal interest in the controversy.

## 2. *The Court Did Not Err in Granting Robinson an Extension of Time*

Robinson's attorney does not dispute on appeal that he should have moved for an award of attorney's fees within 60 days after the clerk of the court served the notice of entry of judgment. (Rules 3.1702(b)(1), 8.104(a).) Still, under the circumstances, we cannot agree with UHC that the court erred in allowing a belated motion. "Rule 3.1702(d) is 'remedial' and is to be given a liberal, rather than strict interpretation. [Citation.]" (*Lewow v. Surfside III Condominium Owners Assn., Inc.* (2012) 203 Cal.App.4th 128, 135 (*Lewow*).) Flexibility is built into Rule 3.1702 through subdivision (d), which allows a judge " '[f]or good cause' " to "extend the time for filing a motion for attorney's fees in the absence of a stipulation or for a longer period than allowed by stipulation." A court may grant a request for extension of time to file a motion for attorney's fees even if the motion is not filed until after the deadline for filing an attorney's fees motion under Rule 3.1702. (*Ibid.*) Even a claim of inadvertence, if it is not prejudicial, may constitute good cause for a late filing. (*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 381 (*Pollard*) [cost bill].)

A litigant faces a steep uphill battle in seeking to reverse a court's finding of "good cause" for an extension of time. Perhaps for that reason, UHC argues that the standard regarding an "attorney's mistake, inadvertence, surprise, or neglect" under Code of Civil Procedure section 473, subdivision (b), must be applied as well under Rule 3.1702, citing *Lewow*, *supra*, 203 Cal.App.4th at page 135. Just because *Lewow* cited a case decided under Code of Civil Procedure section 473 (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335) does not mean it should be read as importing that section's legal standards wholesale into Rule 3.1702. To the extent it has been so read (see *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1444 (*Community Youth Athletic Center*)), we believe further proliferation of this idea should be avoided. Rather, in our view, the trial court has considerably more latitude in ruling on an extension of time to file an attorney's fees motion under the "good cause" standard of Rule 3.1702(d) than it does in granting relief from a "judgment, dismissal [or] order" under Code of Civil Procedure, section 473, subdivision (b).

24

Where the standard requires "good cause" only, it has been " ' "equated to a good reason for a party's failure to perform that specific requirement [of the statute] from which he seeks to be excused." ' " (*Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1036.)  In the context of a motion to extend time under Rule 3.1702(d), we should pay special deference to the trial court's view, which was informed by its personal interactions with counsel.  Accordingly, a trial court's finding of "good cause" is generally reviewed deferentially, solely for abuse of discretion.  (*People v. Clark* (2016) 63 Cal.4th 522, 551 [good cause for criminal trial continuance]; *County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 949 [good cause for extension of time for bail bondsman to produce defendant]; *Munroe v. Los Angeles County Civil Service Com.* (2009) 173 Cal.App.4th 1295, 1303 [deference paid to county agency's decision on lack of good cause for late filing of administrative appeal].)  This same deferential standard of review applies as well to the court's ultimate award of attorney's fees under section 1021.5.  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578; *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 540–541.)

Although Judge Kinnicutt initially believed he had been clear in advising Robinson's counsel to file a motion after judgment, he became convinced after hearing counsel's explanation that Robinson's counsel had made an "honest mistake" in misconstruing the court's earlier pronouncements.  The judge's factual finding of an "honest mistake" is supported by the attorney's declaration.  The judge did not abuse his discretion, and in fact exercised it judiciously by first denying fees requested by the memorandum of costs and later granting leave to file a late motion when counsel provided a satisfactory explanation.

Counsel's "honest mistake of law" may constitute good cause under Rule 3.1702(d), depending in large part on the reasonableness of the misconception.  (See *Lewow*, *supra*, 203 Cal.App.4th at p. 135; *Community Youth Athletic Center*, *supra*, 220 Cal.App.4th at pp. 1444–1445.)  The reasonableness of counsel's misunderstanding in this case turned in large part on the reasonableness of his interpretation of the court's

25

prior orders. Credibility no doubt played a key role, and on that issue, too, we defer to the trial judge. (See *People v. Jones* (2015) 57 Cal.4th 899, 917 [prosecutor's credibility in explaining reasons for excusing juror]; *People v. Carasi* (2008) 44 Cal.4th 1263, 1290–1291 [juror's state of mind]; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [credibility of declaration supporting relief from default].) The trial judge, who lived with this case for several years, was in a much better position to gauge the reasonableness of counsel's misconception and the various actors' good faith or bad.

Furthermore, we see no prejudice to U-Haul resulting from the procedural snafus, and no reason to grant it windfall protection from attorney's fees exposure. It knew from before entry of judgment the legal grounds upon which fees were sought and the amount Robinson was seeking (including detailed breakdowns). The fact that there were procedural irregularities provides no basis for invalidating the award where UHC makes no attempt to show prejudice. (*Pollard*, *supra*, 12 Cal.3d at p. 381 ["In the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill"].)

## IV. DISPOSITION

The judgment is affirmed, as is the May 14, 2015 order awarding attorney's fees to Robinson. Robinson shall recover his costs on appeal.

_____
Streeter, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

A141396, A145828/*Robinson v. U-Haul Co. of California*

Leigh Robinson v. U-Haul Company of California et al. (A141396 & A145828)


Trial Court:    Solano County Superior Court

Trial Judge:    Hon. Harry S. Kinnicutt

Counsel:

Alston & Bird, James R. Evans, Jr., and Ryan T. McCoy for
        Defendants and Appellants.

Law Offices of Freeman & Freeman, Rebecca J. Freeman, Matthew C. Freeman and
Molly A. Gilardi for
        Plaintiff and Respondent.