Filed 9/27/21

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> M&N FINANCING CORPORATION et al., <br><br> Defendants and Appellants. | B298901 <br><br> (Los Angeles County Super. Ct. No. BC591206) |

APPEALS from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley and Amy D. Hogue, Judges. Affirmed in part; reversed in part.

Xavier Becerra and Rob Bonta, Attorneys General, Matthew Rodriguez, Acting Attorney General, Michael L. Newman, Senior Assistant Attorney General, Susan E. Slager, R.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.A.

Erandi-Zamora-Graziano, and Brian J. Bilford, Deputy Attorneys General, for Plaintiff and Appellant.

Ivan L. Tjoe; Ropers Majeski and Terry Anastassiou for Defendant and Appellant M&N Financing Corporation.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Caroline E. Chan, and Allison A. Arabian for Defendant and Appellant Mahmood Nasiry.

———————————————————

## I. INTRODUCTION

Defendants M&N Financing Corporation (M&N) and Mahmood Nasiry operated a business that purchased retail installment sales contracts (contracts) from used car dealerships. In deciding how much to pay for the contracts, defendants used a formula that considered the gender of the car purchaser. Specifically, defendants would pay more for a contract with a male purchaser than for a contract with a female purchaser or female coborrower (collectively, female borrowers).

The Department of Fair Employment and Housing (the Department) filed a complaint that alleged numerous causes of action. The Department moved for summary adjudication. The trial court entered judgment in favor of the Department on the first and second causes of action, which alleged violations of the Unruh Civil Rights Act (Civ. Code, § 51) and Civil Code section 51.5, and assessed over $6 million in statutory damages pursuant to Civil Code section 52, subdivision (a). The court dismissed the fifth, sixth, and seventh causes of action, which alleged violations

of Government Code[1] section 12940, subdivisions (i) and (k) of the Fair Employment and Housing Act (FEHA) (§ 12900 et seq.). Defendants appeal and the Department cross-appeals. We hold that the court erred in dismissing the fifth cause of action. We otherwise affirm.

## II. BACKGROUND

A.     *Factual Background*[2]

Nasiry is the owner of M&N, a California corporation that purchased contracts from used car dealerships and thereafter serviced them by collecting monthly installment payments from the car purchasers and contacting those purchasers who failed to make payments.

In deciding whether and how much to bid on a contract, M&N utilized a risk assessment spreadsheet (spreadsheet) that Nasiry created in 2012. Based on Nasiry's 10 years of experience with loan defaults, he believed that there was "a greater risk of default for female borrowers." Thus, Nasiry included the gender of the used car purchaser as one of the 18 to 20 specific factors on the spreadsheet. For gender, M&N employees, at Nasiry's

---

[1]     Further statutory references are to the Government Code unless otherwise indicated.

[2]     "In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [the] evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859 (*Serri*).)

direction, assessed one point for a contract with a female purchaser, zero points for a contract with a male purchaser, and a half-point for a contract with a female coborrower. Each point on the spreadsheet corresponded to a percentage point so that M&N would pay a car dealership one percent less for a contract with a female purchaser and half a percent less for a contract with a female coborrower than it would pay for a contract with a male purchaser.

M&N purchased approximately half of the contracts that it reviewed. From October 17, 2012, to July 2, 2014, M&N purchased 1,037 contracts with female borrowers from 517 car dealerships.

In 2014, the Department initiated an investigation of M&N's business practices, following which M&N ceased to use gender as a factor in its spreadsheet.

B. *Pleadings*

The Department filed its initial complaint in 2015. On February 16, 2016, the Department filed the operative second amended complaint, alleging in the first and second causes of action violations of Civil Code sections 51 and 51.5 and section 12948.[3] In lieu of actual damages, the Department sought the

---

[3] The Department alleged nine causes of action against defendants and eventually voluntarily dismissed the third, fourth, eighth, and ninth causes of action with prejudice. On January 15, 2019, the trial court granted M&N's motion for judgment on the pleadings and dismissed the fifth, sixth, and seventh causes of action. We discuss the fifth, sixth, and seventh causes of action below when we address the Department's cross-appeal.

statutory minimum penalty of $4,000 per violation, and also sought injunctive relief.

On July 25, 2016, the Department filed a motion for summary adjudication on the first and second causes of action. On September 14, 2016, the trial court granted summary adjudication on the first and second causes of action, ruling that defendants' conduct violated Civil Code sections 51 and 51.5 as a matter of law.

On November 4, 2016, the Department filed a motion for an injunction and monetary relief in the amount of $6,216,000, the statutory minimum penalty for 1,554 violations[4] of Civil Code sections 51 and 51.5. On July 25, 2017, the trial court granted the motion, issuing an injunction and awarding statutory damages in the amount of $6,212,000.

On May 24, 2019, the trial court entered judgment. The Department and defendants appealed.

## III. DISCUSSION

A. *Defendants' Appeal*

1. <u>Applicable Law</u>

"A grant of summary adjudication is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] A plaintiff

---

[4]     The number of violations was the sum of the total number of contracts defendants purchased with female borrowers and the number of car dealerships from whom they purchased such contracts.

moving for summary adjudication meets its burden if it proves each element of the cause of action. [Citation.] '[I]f a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as *a matter of law*, but would have to present his evidence to a trier of fact.' [Citation.] If the plaintiff meets its burden, the defendant must set forth specific facts showing a triable issue of material facts exist." (*Quidel Corporation v. Superior Court of San Diego County* (2020) 57 Cal.App.5th 155, 163–164; see Code Civ. Proc., § 437c, subd. (p)(1).) "The trial court's ruling on a motion for summary adjudication, like that on a motion for summary judgment, is subject to this court's independent review." (*Serri, supra*, 226 Cal.App.4th at p. 858.)

The Unruh Civil Rights Act (Unruh Act) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).)[5] "The [Unruh] Act, like the common law principles upon which it was partially based, imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination. [Citations.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167 (*Angelucci*).) "The [Unruh] Act is to be given liberal construction

---

[5] "'Sex' also includes, but is not limited to, a person's gender. 'Gender' means sex, and includes a person's gender identity and gender expression." (Civ. Code, § 51, subd. (e)(5).)

with a view to effectuating its purposes." (*Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 28 (*Koire*); accord, *White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025 (*White*).)

Civil Code section 51.5, subdivision (a) further provides: "No business establishment of any kind whatsoever shall discriminate against . . . or refuse to buy from, [or] contract with . . . any person . . . on account of any characteristic listed or defined in subdivision (b) or (e) of [Civil Code] [s]ection 51 . . . or because the person is associated with a person who has, or is perceived to have, any of those characteristics." Thus, Civil Code section 51.5 proscribes not only direct discrimination based on sex but also discrimination against an entity "on account of its association with women." (See *Rotary Club of Duarte v. Board of Directors* (1986) 178 Cal.App.3d 1035, 1061 (*Rotary Club of Duarte*).) Additionally, "the analysis under Civil Code section 51.5 is the same as the analysis" under the Unruh Act. (*Semler v. General Electric Capital Corp.* (2011) 196 Cal.App.4th 1380, 1404.)

    2.    <u>Analysis</u>

Here, defendants do not contest that they used gender in setting the price they paid for contracts or that they paid less for contracts with female borrowers than for contracts with male purchasers. We have little trouble concluding that such conduct constitutes sex discrimination within the meaning of Civil Code sections 51 and 51.5 against female borrowers (*Angelucci, supra*, 41 Cal.4th at p. 174) and against the car dealerships who associated with them (*Rotary Club of Duarte, supra*, 178 Cal.App.3d at p. 1061).

7

Rather than dispute the lack of a triable issue of material fact regarding the nature of their business practice, defendants contend that the judgment against them must be vacated because: (1) the Department did not have standing to sue; (2) the female borrowers and car dealerships did not suffer an injury; and (3) the female borrowers were not "clients, patrons, or customers of . . . defendants" within the meaning of the Unruh Act. Nasiry additionally argues that (1) he cannot be individually liable for M&N's conduct because he did not know that his conduct was illegal; (2) defendants' conduct was authorized by Civil Code section 51.6, subdivision (c); and (3) the amount of statutory damages is unconstitutionally excessive. We consider each of defendants' arguments below.

a.    Standing

The Department is authorized pursuant to sections 12920 and 12930, subdivision (f)(2) to prosecute violations of Civil Code sections 51 and 51.5. (See also § 12948 ["It is an unlawful practice under this part for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51 [or] 51.5 . . . of the Civil Code"].) The Department is also authorized to bring a civil action on behalf of aggrieved parties (§§ 12930, subd. (h), 12965, subd. (a)), including a class or group (§ 12961).

Defendants contend that because there is no evidence that any female borrower or car dealership filed a complaint with the Department, the Department lacked standing to sue. In defendants' view, section 12961 conditions the Department's filing of a complaint upon receipt of an individual verified complaint. We disagree. Section 12961 provides, in pertinent

8

part:  "Where an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons of which the aggrieved person filing the complaint is a member, or *where such an unlawful practice raises questions of law or fact which are common to such a group or class*, the aggrieved person or *the director* may file the complaint on behalf and as representative of such a group or class."  (Italics added.)  Thus, section 12961, by its plain terms, does not require the filing of a complaint by an aggrieved person prior to the Department's initiation of a lawsuit.  (See also § 12960, subd. (c) ["The director or the director's authorized representative may in like manner, on that person's own motion, make, sign, and file a complaint"].)

Defendants also assert that because they ceased their discriminatory practice, the Department lacked standing under section 12965, subdivision (a) to pursue its civil action for statutory damages and injunctive relief.  Defendants, however, cite no authority for the proposition that Civil Code sections 51 and 51.5 claims cannot be filed against defendants who cease their discriminatory conduct after the initiation of a governmental investigation, and we are aware of none.  The statutory damages that the trial court assessed under Civil Code section 52, subdivision (a) were for violations that predated defendants' removal of gender as a factor on their spreadsheets.  Further, "there is no hard-and-fast rule that a party's discontinuance of illegal behavior makes injunctive relief against him or her unavailable."  (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 315.)  Thus, the Department had standing to bring the civil action here.

9

### b. Injury

Defendants next assert that their business practice, even if discriminatory, did not cause any injury and cite *White, supra*, 7 Cal.5th 1019 in support. In *White,* our Supreme Court held: "[W]e have acknowledged that "'a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct.'" (*Angelucci, supra*, 41 Cal.4th at p. 175.) 'In essence, an individual plaintiff has standing under the [Unruh] Act if he or she has been the victim of the defendant's discriminatory act.' (*Ibid*. ['plaintiff must be able to allege injury—that is, some "invasion of the plaintiff's legally protected interests"'].)" (*White, supra*, 7 Cal.5th at p. 1025.)

We reject defendants' characterization of the discrimination here as "abstract." When bidding on and purchasing contracts, defendants paid less for those with female purchasers and female borrowers and did so based solely on gender. Such conduct constitutes an invasion of the female borrowers' legally protected interest to be free from arbitrary sex discrimination, by rendering their contracts less valuable than those with male purchasers, and violates the car dealerships' rights of association with female borrowers by lowering the price they were able to obtain for contracts with such borrowers.

Having demonstrated that defendants' conduct was directly discriminatory to these victims, the Department was not additionally required to demonstrate actual injury because it sought only statutory minimum damages. "[T]he [Unruh] Act renders 'arbitrary sex discrimination by businesses . . . *per se* injurious.' (*Koire, supra*, 40 Cal.3d at p. 33.) . . . '[Civil Code] [s]ection 51 provides that all patrons are entitled to *equal*

treatment. [Civil Code] [s]ection 52 provides for minimum statutory damages . . . for *every* violation of [Civil Code] section 51, *regardless* of the plaintiff's actual damages.' ([*Koire, supra,* 50 Cal.3d at p. 33, fn. omitted].)" (*Angelucci, supra,* 41 Cal.4th at p. 174.)

c. Civil Code sections 51 and 51.5 apply to defendants' conduct

Defendants next assert that they did not discriminate within the meaning of Civil Code sections 51 and 51.5 because they did not negotiate the terms of the contracts with any female borrowers. According to defendants, "Unruh Act liability requires a finding that the allegedly discriminated-against party either did business with, or was denied the opportunity to do business with, the alleged discriminator on the basis of unlawful discrimination. In this case, there is no evidence that the used car [purchasers] had any part in the only transaction about which discrimination is alleged—M&N's bidding for existing finance contracts." To the extent defendants contend that the Unruh Act prohibits only the denial of the opportunity to do business, "[t]he scope of the statute clearly is not limited to exclusionary practices. The Legislature's choice of terms evidences concern not only with access to business establishments, but with equal treatment of patrons *in all aspects of the business.*" (*Koire, supra,* 40 Cal.3d at p. 29, italics added.) Here, the car dealerships conducted business with defendants by offering and selling contracts to them. Further, after defendants purchased contracts with female borrowers, they proceeded to service such contracts, which rendered female borrowers patrons of defendants.

11

Accordingly, defendants' business practices fall within the scope of conduct proscribed by Civil Code sections 51 and 51.5.

### d. Nasiry's knowledge of unlawfulness

Nasiry contends he cannot be found individually liable because he did not believe that M&N's conduct violated the Unruh Act. We disagree. Nasiry created the spreadsheet used by M&N to engage in discriminatory practices and ordered its use. He therefore is responsible for the violations of Civil Code sections 51 and 51.5. To the extent *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 389, cited by defendants, suggests that an individual can only be liable for discrimination if he knows that his conduct violates a statute, we disagree, as Civil Code sections 51 and 51.5 do not require that a discriminator know that he is in violation of a statute. (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 396 ["'It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof'"].)

### e. Civil Code section 51.6

Nasiry additionally asserts that his conduct was authorized by Civil Code section 51.6, known as the Gender Tax Repeal Act of 1995, and which provides, in pertinent part: "(b) No business establishment of any kind whatsoever may discriminate, with respect to the price charged for services of similar or like kind, against a person because of the person's gender. [¶] (c) Nothing in subdivision (b) prohibits price differences based specifically upon the amount of time, difficulty, or cost of providing the services." (Civ. Code, § 51.6, subds. (b) and (c).)

Civil Code section 51.6, subdivision (c) thus excludes price differences from liability under the Gender Tax Repeal Act of 1995.  The Department, however, did not allege a violation of that act and indeed the Department is not authorized to prosecute violations of Civil Code section 51.6.  (See §§ 12930, 12948.)  Section 51.6, subdivision (c), by its express terms, does not immunize otherwise unlawful sex discrimination under Civil Code sections 51 and 51.5.  Accordingly, we reject Nasiry's argument.

### f.	Excessive damages

Nasiry also argues that $6,212,000 in statutory damages is unconstitutional as an excessive fine.  In analyzing whether the damages here were unconstitutionally excessive, we consider the four factors enumerated in *United States v. Bajakajian* (1998) 524 U.S. 321 (*Bajakajian*):  "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay."  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)  "'We review de novo whether a fine is constitutionally excessive and therefore violates the Eighth Amendment's Excessive Fines Clause.'  [Citations.] "[F]actual findings made by the district courts in conducting the excessiveness inquiry, of course, must be accepted unless clearly erroneous.'  [Citation.]"  (*Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1136–1137.)  "We review the 'underlying factual findings . . . for substantial evidence, viewing the record in the light most favorable to the

ruling.'"  (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 857.)

Our review of the four *Bajakajian* factors demonstrates that the statutory damages were not excessive.  First, defendants' level of culpability supports the imposition of a heavy fine: defendants were perpetrators of sex discrimination who maintained that their unequal treatment of female borrowers was justified by the higher likelihood that women would default on their loans.  Second, the relationship between the harm and the penalty is strong:  defendants harmed female borrowers and the car dealerships that entered into contracts with them, and were fined for each discriminatory transaction.  (See *White*, *supra*, 7 Cal.5th at p. 1025 ["The purpose of the [Unruh] Act is to create and preserve 'a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments'"].)  As to the third factor, although defendants do not identify similar statutes, a statutory minimum penalty for each violation is generally not unconstitutional.  (See *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 397 ["'Within the civil penalty context, . . . a provision authorizing the imposition of a minimum civil penalty per violation, with each day constituting a separate violation, could not because of its civil character be subject to challenge under the constitutional provisions prohibiting excessive fines'"].)

Finally, the record supports an inference that defendants were able to pay the damages.  Carl Saba, a forensic accountant hired by the Department, opined that based on his review of defendants' financial information, defendants had the ability to pay "either a significant portion of, or all of . . . [a] $7.2 million

14

judgment in favor of [the Department. . . .]" Saba noted that M&N's cash balance for fiscal years 2012 and 2013 totaled $5.98 million and $9.12 million, respectively, and, based on his evaluation of M&N's operating expenses, he believed that the excess cash balance would be between $4.4 million and $7.5 million. Further, Saba identified two residential properties that Nasiry appeared to have obtained, debt-free, in 2015 and 2017, for $3.150 million and $1.725 million. Finally, Saba opined that, based on his review of financial statements, if M&N continued to perform services required over the term of the remaining contracts beyond 2013, "it would earn between another $10.71 and $9.1 million in contracts receivable respectively."

We therefore hold the trial court properly granted summary adjudication on the Department's first and second causes of action against defendants.

B.     *The Department's Cross-Appeal*

On cross-appeal, the Department contends that the trial court erred by granting M&N's motion for judgment on the pleadings as to its fifth, sixth, and seventh causes of action.

1.     Background

"'"The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law." [Citation.]'" (*Southern California Edison Co. v. City of Victorville* (2013) 217 Cal.App.4th

15

218, 227.) We recite the relevant allegations from the second amended complaint as follows.

When Nasiry created the spreadsheet in 2012, Khayyam Etemadi, then an M&N employee, told Nasiry that it was illegal to use gender to assign an additional risk point to women. Nasiry refused to remove gender as a factor in assessing risk and asserted that all banks engaged in such conduct. Etemadi complained again when the spreadsheet was placed on employee laptops, and again in November 2013. Nasiry refused each time to remove gender as a factor on the spreadsheet.

After complaining to Nasiry about discrimination in November 2013, Etemadi collapsed at work and was taken to the hospital. Etemadi experienced heart palpitations and was hospitalized overnight.

During the course of Etemadi's employment with M&N, Nasiry threatened to "ruin him financially" and directed him to do his job or be fired, thus coercing him to engage in conduct that was discriminatory and unlawful.

After Etemadi filed a complaint with the Department, M&N falsely reported to various credit agencies that Etemadi had failed to repay a loan from M&N. Etemadi left M&N in March 2014 due to stress at work.

## 2. Fifth, Sixth, and Seventh Causes of Action

In the operative complaint, the Department alleged for the fifth cause of action that M&N "knowingly compelled and coerced its employees to engage in practices that violated" FEHA and Civil Code sections 51 and 51.5, in violation of section 12940, subdivision (i).

As to the sixth and seventh causes of action, the Department alleged, on behalf of all current and former M&N employees and itself, respectively, that M&N failed to take all reasonable steps to prevent discrimination from occurring, in violation of section 12940, subdivision (k).

3. Motion for Judgment on the Pleadings

On October 9, 2018, M&N moved for judgment on the pleadings as to the fifth, sixth, and seventh causes of action.[6] M&N argued that the fifth through seventh causes of action failed to state a claim because Etemadi did not exhaust his administrative remedies. M&N also argued that the sixth and seventh causes of action failed because the Department did not allege an employment discrimination cause of action under FEHA.

On January 15, 2019, the trial court granted M&N's motion, ruling that section 12940, subdivision (i) did not apply because Etemadi and the current and former employees of M&N were not aggrieved parties under that statute. As to the sixth and seventh causes of action, the court ruled that section 12940, subdivision (k) did not impose a duty on employers to prevent violations of the Unruh Act against nonemployees.

_____

[6] Nasiry also moved for judgment on the pleadings. The trial court denied his motion because he was not a named defendant in the fifth, sixth, and seventh causes of action.

17

4.    <u>FEHA</u>

"In enacting the FEHA, the Legislature spoke at length about its purposes.  Section 12920 states:  'It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation.  [¶]  It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general.'

"Section 12920 further declares:  'It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices.'  And section 12920.5 provides:  'In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons.'

"In addition, section 12921, subdivision (a) says:  'The opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation is

18

hereby recognized as and declared to be a civil right.'  Section 12993, subdivision (a) instructs that the FEHA 'shall be construed liberally for the accomplishment of [its] purposes.'" (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 223.)

Relevant here are subdivisions (i) and (k) of section 12940, which provide:  "It is an unlawful employment practice [with exceptions not applicable here]:  [¶]  . . .  [¶]  (i)  For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.  [¶]  . . .  [¶] (k) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

5.    Analysis

We review a trial court's decision on a motion for judgment on the pleadings de novo.  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)  "'"Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose.  [Citations.]  We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject."' [Citation.]  In doing so, we give '"the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]."' [Citation.]  Our inquiry ends '"[i]f this contextual reading of the statute's language reveals no ambiguity . . . ."' [Citation.]" (*Lee v. Kotyluk* (2021) 59 Cal.App.5th 719, 729.)

The trial court ruled, and we agree, that it is unlawful under section 12940, subdivision (i) for any employer to coerce an employee to violate Civil Code sections 51 and 51.5. (See § 12948.) Nonetheless, the court ruled that Etemadi and former and current M&N employees were not aggrieved within the meaning of section 12965, subdivision (a).[7]

An "aggrieved" party is a person who has standing to sue. (See, e.g., § 12965, subd. (a) ["In any civil action, the person claiming to be aggrieved shall be the real party in interest and shall have the right to participate as a party and be represented by that person's own counsel"]; § 12960, subd. (c) ["Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint, in writing . . ."].)

"'To have standing, a party must be beneficially interested in the controversy; that is, he or she must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.' [Citation.] [¶] The prerequisites for standing to assert statutorily[-]based causes of action are determined from the statutory language, as well as the underlying legislative intent

---

[7] We consider whether the Department can bring suit on behalf of employees for an alleged violation of section 12940, subdivision (i). There is no dispute that the Department can sue on its own behalf. (§ 12930, subd. (f)(1).)

and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.)

We hold that employees who are coerced by their employer to violate Civil Code sections 51 and 51.5 are "aggrieved" within the meaning of section 12965, subdivision (a) and have standing to sue their employer pursuant to section 12940, subdivision (i). As discussed, "[i]t is an unlawful practice under this part for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section[s] 51, 51.5, 51.7, 51.9, 54, 54.1, or 54.2 of the Civil Code." (§ 12948.) Liability for violations of Civil Code sections 51 and 51.5 "extends beyond the business establishment itself to the business establishment's employees responsible for the discriminatory conduct." (*North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1154.) Thus, Etemadi and other employees of M&N who were coerced by M&N into violating Civil Code sections 51 and 51.5 could be individually liable for sex discrimination. These employees would necessarily be "aggrieved" by their employer's unlawful employment practice as their personal interests would be affected by their employer's misconduct. The Department therefore was authorized to file a civil action on behalf of these employees and the trial court erred by dismissing the fifth cause of action.

> b.      Section 12940, subdivision (k)

The Department also asserts that the trial court erred by dismissing its sixth and seventh causes of action for violation of section 12940, subdivision (k). Section 12940, subdivision (k) proscribes an employer's failure to take reasonable steps to prevent *discrimination* and harassment. Moreover, in order to

21

state a claim under section 12940, subdivision (k), a plaintiff must be able to prevail on an underlying claim of discrimination. Here, the Department does not allege that M&N discriminated against or harassed Etemadi and other employees. Rather, the Department asserts that "discrimination" under subdivision (k) encompasses violations of various subdivisions of section 12940, including subdivision (i), and cites in support *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1239–1240 (*Taylor*), disapproved on other grounds by *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1162.

In *Taylor*, the court held that retaliation under section 12940, subdivision (h) is a form of discrimination actionable under section 12940, subdivision (k). (*Taylor*, *supra*, 144 Cal.App.4th at p. 1240.) The court reached this conclusion, in part, based on the language of subdivision (h), which makes it an unlawful employment practice "'[f]or any employer . . . to discharge, expel, or *otherwise discriminate* against any person because the person has opposed any practices forbidden under this part . . . .'" (*Taylor*, *supra*, 144 Cal.App.4th at p. 1237, italics added.) Thus, an employer who has retaliated against an employee has necessarily discriminated against that employee and has failed to prevent discrimination, within the meaning of section 12940, subdivision (k). (*Taylor*, *supra*, 144 Cal.App.4th at p. 1240.)

Section 12940, subdivision (g) also proscribes as an unlawful employment practice "[f]or any employer . . . to harass, discharge, expel, or *otherwise discriminate* against any person because the person has made a report pursuant to [s]ection 11161.8 of the Penal Code that prohibits retaliation against

22

hospital employees who report suspected patient abuse by health facilities or community care facilities." (Italics added.)

By contrast, section 12940, subdivision (i) does not include similar language. (See § 12940, subd. (i) [proscribing as unlawful employment practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so"].) Where, as here, "'the Legislature makes express statutory distinctions, we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended.'" (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 502; see also *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59 ["When interpreting statutes, 'we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . . "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed"'"].) We therefore presume that the Legislature intended the distinction between section 12940, subdivisions (g) and (h), which include the terms "otherwise discriminate" and reference other unlawful acts, and subdivision (i), which does not, and hold that a violation of subdivision (i) is not "discrimination" within the meaning of section 12940, subdivision (k).

The Department therefore failed to allege facts demonstrating that defendants violated section 12940, subdivision (k) and the trial court did not err by dismissing the sixth and seventh causes of action.

23

## IV.  DISPOSITION

The judgment is reversed as to the dismissal of the fifth cause of action and the matter is remanded for further proceedings.  The judgment is otherwise affirmed.  The Department is entitled to recover costs pertaining to M&N's and Nasiry's appeals.  The parties are to bear their own costs pertaining to the Department's appeal.

CERTIFIED FOR PARTIAL PUBLICATION

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.